[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Edward Mackowski, appeals from a decision of the defendant, the Zoning Commission of the Town of Stratford (commission), denying the plaintiff's application for a special case permit to construct 43 apartment units for senior citizen housing on property located at 936 Judson Place, Stratford. The plaintiff submitted a petition for approval of a special case to permit the construction of a 43 unit apartment building for senior citizens. The property is located in a RS-4 District which permits residence apartments only upon approval as a special case. Subsequent to a public hearing which was held on the application, the commission voted to deny the plaintiff's application without stating reasons for its decision.
The plaintiff has appealed to this court from the commission's denial of his application. He claims that the commission "acted illegally, arbitrarily, and in abuse of the discretion vested in it by denying the appellant's petition which complied with the Zoning Regulations of the Town of Stratford; and in that said Regulations, as it applies to approval as a Special Case under Section 20 of the Zoning Regulations as required by Section 5.3 are vague, arbitrary, ambiguous and capricious; and in that it deprives appellant of the ability to use and develop his property as permitted by law, without just cause." CT Page 13727
 I
General Statutes § 8-8(b) provides that "any person aggrieved by any decision of a board may take an appeal to the superior court. . . ." "`Board' means a . . . combined planning and zoning commission. . . ." General Statutes § 8-8(a)(2). Even though the defendants have not challenged the plaintiffs' claim that they are aggrieved, "[p]roof of aggrievement is essential to a court's jurisdiction of a zoning appeal. Hughesv. Town Planning Zoning Commission, 156 Conn. 505, 509,242 A.2d 705 (1968)." Connecticut Resources Recovery Authority v.Planning Zoning Commission, 225 Conn. 731, 739 n. 12,626 A.2d 705 (1993). For that reason, in a zoning appeal, the court should make a finding as to whether any plaintiff is aggrieved.Baccante v. Zoning Board of Appeals, 153 Conn. 44, 45,212 A.2d 411 (1965); Fox v. Zoning Board of Appeals, 146 Conn. 665, 667,154 A.2d 520 (1959). The plaintiff is the record owner of several smaller parcels which combine to an area of over 63,000 square feet upon which the proposed project would be built. (Record, Items #9, #10, #21, p. 2). As the landowner of the subject property, the plaintiff is aggrieved. See WinchesterWoods Associates v. Planning and Zoning Commission, 219 Conn. 303,308, 592 A.2d 953 (1991).
 II
"In reviewing an appeal from an administrative agency, the trial court must determine whether `the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion.' Board of Education v. State Employees RetirementsCommission, 210 Conn. 531, 541, 556 A.2d 572 (1989); Frito-Lay,Inc. v. Planning Zoning Commission, 206 Conn. 554, 573,538 A.2d 1039 (1988)" Smith v. Zoning Board of Appeals, 227 Conn. 71,80, 629 A.2d 1089 (1993), cert. denied, 114 S.Ct. 1190
(1993). "The burden of proof is on the plaintiff to demonstrate that the Commission acted improperly." Spero v. Board ofAppeals, 217 Conn. 435, 440, 586 A.2d 590 (1991).
General Statutes § 8-3c(b) provides that "[w]henever a commission grants or denies a special permit or special exception, it shall state upon its records the reason for its decision." This requirement, however, is only directory and it is "not legally necessary that the [commission] make a formal finding of facts upon which its action was based. . . . [T]he passing of a decree is, ipso facto, a finding of fact. . . ." CT Page 13728Perdue v. Zoning Board of Appeals, 118 Conn. 174, 178, 171 A. 26
(1934).
Whether the commission states reasons for its decision does implicate the nature of this court's review of that decision on appeal. "[W]here a zoning commission has formally stated the reasons for its decision, the court should not go behind that official collective statement of the commission . . . . [W]here there is a failure to comply with the obligation to state reasons, the action is not deemed void but the court must search the record to see whether the board was justified in its decision. (Citations omitted; internal quotation marks omitted.)" West Hartford Interfaith Coalition, Inc. v. TownCouncil, 228 Conn. 498, 514-15, 636 A.2d 1342 (1994).
A special case under Stratford Zoning Regulations is equivalent to a special permit or special exception. Mobil OilCorp. v. Zoning Commission, 30 Conn. App. 816, 817 n. 1,622 A.2d 1035 (1993). "`A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience, and property values. . . . Acting in this administrative capacity, the [zoning commission's] function is to determine whether the applicant's proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and the statute are satisfied.' (Citations omitted; internal quotation marks omitted.) A.P. W. Holding Corporation v. Planning Zoning Board, 167 Conn. 182,185, 355 A.2d 91 (1974)." Id., 819.
 III
The commission argues that it denied the plaintiff's application for the following reasons: "1. Project density is too high; 2. Traffic generated by the complex too high; 3. Three story design presents safety concerns; 4. Lack of guarantee that the project will be maintained for elderly housing." The plaintiff contends that the reasons now advanced by the commission are generalized reasons relating to health, safety, welfare, and impact on the public, and fall short of providing guidance as to what must be done to comply.
First, with respect to the commission's claim that the CT Page 13729 project may not remain an elderly housing complex, and that the project would develop into general residence apartments, the plaintiff contends that he offered to stipulate that the project would be limited to elderly housing, but that the commission unreasonably rejected this offer. He also argues that the regulations do not distinguish between elderly housing apartments and general residence apartments, and that it is improper for the commission to deny an application based on the distinction.
The plaintiff's application expressly sought approval for senior citizen housing. Section 20.2 of the zoning regulations provides that the commission may stipulate "such restrictions as appear to the commission to be reasonable and the minimum necessary to protect property values in the district as a whole and the public health, safety and welfare." The commission is empowered to attach conditions to its approval of a special permit and could have restricted the use of the property to elderly housing in approving the special case. See Stratford Zoning Regulations § 20.2; Kaufman v. Zoning Commission,232 Conn. 122, 147, 653 A.2d 798 (1995). While a zoning board is not generally required to cure by annexing conditions to an approval of an application which does not otherwise satisfy the requirements in the regulations, this is not such a case. For the commission to require the plaintiff to encumber his property with a restrictive covenant under these circumstances prior to commission approval would be unreasonable. The commission could not reasonably deny the plaintiff's application on this ground.
The commission also claims that the plaintiff's plan for parking is deficient. The proposed plan provides one and one-half spaces per unit. There are two seemingly inconsistent parking requirements in the Stratford Zoning Regulations. The section of the regulations addressing the requirements of residence apartments is § 5.3. Section 5.3.3 states in part that the property should provide for "the parking of automobiles of the residents thereof to the extent of not less than one and one-half parking spaces per family unit." Section 12 contains the regulations for off-street parking. Section 12.5.2 provides that "[f]or residence apartments, 2.0 spaces for each dwelling unit [shall be required]."
"In interpreting the language of the regulations, our function is to determine the expressed legislative intent."McCrann v. Town Plan Zoning Commission, 161 Conn. 65, 73, CT Page 13730282 A.2d 900 (1971). Zoning "regulations must be construed as a whole and in such a way as to reconcile all their provisions."Kleinsmith v. Planning Zoning Commission, 157 Conn. 303, 313,254 A.2d 486 (1968). "In construing regulations, the general rules of statutory construction apply." Smith v. Zoning Boardof Appeals, supra, 227 Conn. 89. It "is a well-settled principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling." (Internal quotation marks omitted.) Gifford v. Freedom of InformationCommission, 227 Conn. 641, 652, 631 A.2d 252 (1993). For this reason, the court holds that § 5.3.3, the subsection pertaining to off-street parking requirements within the section of the regulations pertaining to residence apartments prevails over § 12.5.2. The plaintiff's proposed project therefore complies with the applicable parking requirements contained in the regulations.
The general requirements for residence apartments are set out in § 5.3 of the zoning regulations. The proposed project complies with the specific technical requirements set out in § 5.3 and its subsections and other subsections, i.e. § 4.1.6.11, which apply to residence apartments. These sections describe standards in terms of size, height, front yard, rear yard, side yard and set back. At the public hearing, Mr. Mingolello of the architectural firm, Mingolello and Hayes, presented the design plan and maps which demonstrated that the project complied with the regulations.
"`The designation of a particular use of property as a permitted use establishes a conclusive presumption that such use does not adversely effect the district and precludes further inquiry in to its effect on traffic, municipal services, property values, or the general harmony of the district.' BeitHavarah v. Zoning Board of Appeals, 177 Conn. 440, 443,418 A.2d 82 (1979)." TLC Development, Inc. v. Planning and ZoningCommission, 215 Conn. 527, 532-33, 577 A.2d 288 (1990); see alsoWhisperwind Development Corp. v. Planning Zoning Commission,32 Conn. App. 515, 526-27, 630 A.2d 108, affirmed, 229 Conn. 176,640 A.2d 100 (1993).
The commission concedes that the proposed project complies with the specific standards of the regulations, but it still contends that it is authorized to deny the application pursuant to the general considerations set out in § 20 of its CT Page 13731 regulations. Section 20.2 provides that "[b]efore approving any Special Case the commission shall consider the following Special Case criteria and objectives in addition to all Site Plan objectives set forth in Section 20.2.2 of these regulations." Section 20.2.2 sets out a number of criteria relating to public health, safety and welfare.[1]
Judge Fuller, in his highly respected treatise, has cautioned that, "[t]he courts should be particularly reluctant to uphold denial of permits based on reasons supported only by general regulations since the special permit process is itself an end run arguing the uniformity concept and the agency can in effect deny any application based on broad statements and claims that it is contrary to the public interest or detrimental to the area. Arbitrary action is easily disguised under such superficial terms." Fuller, R., Connecticut Practice, Vol. 9,Land Use Law and Practice, § 33.4, p. 572 (1993). Nevertheless, courts have ruled that a commission may deny a special permit application on the basis of the general considerations of a town's regulations. Whisper Wind Development Corp. v. Planning Zoning Commission, supra, 32 Conn. App. 520. However, where, as here, a land use board does not state any reasons in its denial of a land use application and later, in an appeal from that denial, offers reasons which are referable only to such general concerns as public health, safety and welfare, the court is duty-bound to undertake a searching review of the evidence in the record, lest the right of appeal be rendered illusory.
The court has examined the record to determine if there is substantial evidence for the denial based on public welfare concerns. See Kaufman v. Zoning Commission, supra, 232 Conn. 145-48;Felsman v. Zoning Commission, 31 Conn. App. 674, 679,626 A.2d 825 (1993). "This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [i]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. . . . [i]t is a compromise between opposing theories of broad or de novo review and restricted review or complete abstention. It is broad enough and capable of sufficient flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative agency . . . CT Page 13732 and to provide a more restrictive standard of review than standards embodying review of weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. (Citations omitted; internal quotation marks omitted.) Huck v. InlandWetlands Watercourses Agency, 203 Conn. 525, 541, 525 A.2d 940
(1987)." Connecticut Health Facilities, Inc. v. Zoning Board ofAppeals, 29 Conn. App. 1, 10 n. 10, 613 A.2d 1358 (1992).
"A reviewing court . . . cannot substitute its judgment as to the weight of the evidence for that of the commission.Housatonic Terminal Corporation v. Panning [Planning] Zoning Board,168 Conn. 304, 306, 362 A.2d 1375 (1975). Furthermore, on factual issues material to the reasons for the commission's decision, the credibility of witnesses is within the province of the commission. Spectrum of Connecticut, Inc. v. Planning ZoningCommission, 13 Conn. App. 159, 163, 535 A.2d 382, cert. denied,207 Conn. 804, 540 A.2d 373 (1988). `So long as it appears that an honest judgment has been reasonably and fairly exercised by the commission after full hearing, courts should be cautious about disturbing [the commission's] decision.' Cameo ParkHomes, Inc. v. Planning Zoning Commission, [150 Conn. 672,677, 184 A.2d 49 (1963)]." Whisper Wind Development Corp. v.Planning Zoning Commission, supra, 32 Conn. App. 523. "The court's review is based on the record, which includes the knowledge of the board members gained through personal observation of the site; [Torsiello v. Zoning Board of Appeals,3 Conn. App. 47, 49-50 484 A.2d 483 (1984)]; or through their personal knowledge of the area involved. Burnham v. Planning Zoning Commission, 189 Conn. 261, 267, 455 A.2d 339 (1983)."Connecticut Health Facilities, Inc. v. Zoning Board of Appeals,29 Conn. App. 1, 10, 613 A.2d 1358 (1992).
Citing R.K. Development v. Norwalk, 156 Conn. 369, 376,242 A.2d 781 (1968), the plaintiff argues that the commission's generalized reasons relating to health, safety, welfare, and impact on the public must fail because they are too vague to justify a denial of the application. In R.K. Development v.Norwalk, supra, the court ruled that the commission's concerns for the "safety for the sake of the children as well as the people living up there; the welfare of the community and also health hazards" was an insufficient basis to support the denial of the application. In Felsman v. Zoning Commission, supra,31 Conn. App. 680, another case cited by the plaintiff, the CT Page 13733 appellate court found that there was not substantial evidence on the record that there was an overuse of the property. It stated: "Although the members of the defendant commission were entitled to take into consideration whatever knowledge they acquire by personal observation; Gulf Oil Corporation v. Boardof Selectmen, 144 Conn. 61, 66, 127 A.2d 48 (1956); there is nothing in the record of the proceedings of the defendant commission to show whether any of its members had viewed the property or had any knowledge of it. Further, there is nothing in the record to show what the defendant relied on in concluding that the granting of the application would result in overuse. `If an administrative agency chooses to rely on its own judgment it has a responsibility to reveal publicly its special knowledge and experience, to give notice of the material facts that are critical to its decision, so that a person adversely affected thereby has an opportunity for rebuttal at an appropriate stage in the administrative proceeding.' Feinson v. ConservationCommission, 180 Conn. 421, 428-29, 429 A.2d 910 (1980)." (Footnote omitted.) Felsman v. Zoning Commission, supra,31 Conn. App. 680.
At the public hearing, there was some public support for the project. Most members of the public who spoke at the hearing, however, opposed the project for one or more of the following reasons: the three floor design made it unsafe for its residents and interfered with the light of the neighborhood, the density and the traffic generated would be excessive for the neighborhood, and the nonconformity with the neighborhood would outweigh its benefit to the community.
In addition to the views expressed by the public, the record contains other evidence that the project may be too dense for the area. The project calls for 29.5 dwelling units per acre. The neighborhood surrounding the proposed project has density values ranging from 2.6 dwelling units to 4 dwelling units per acre. In the notes attached to the application, the Planning and Zoning Department, in its planning review, commented that it was concerned about the density of the project.
The commission expressed concern about the effect the proposed project would have on traffic. A traffic impact study was conducted by I.K. Chann Associates, Transportation Engineers. The study concludes that "the proposed project will have minimal traffic impact on area roadways and can be CT Page 13734 satisfactorily accommodated in terms of on-site and off-site traffic operations and safety." At the hearing, commission member, Mr. Richard, disagreed with the traffic study from his personal experiences. He challenged the credibility of the study because it considered national averages, including "South Carolina, Georgia, and the backwoods of Mississippi."
The commission also was concerned about the project's height. The project was to be three-stories high, as permitted by the regulations, but most buildings in the area are less than three stories high. The project, however, also called for towers that would extend to 48 feet. The planning and zoning department, in its zoning review, also expressed a concern over the height of the project.
The commission further argues that the project will not conform with Stratford's plan of development or the town's policies. There presently stands a boarding house which is considered a contributing structure in the Stratford Center National Register Historic District. Stratford's town plan of development provides that "Stratford's remaining unique historical structures and sites, and areas of unique physical beauty should be protected through public purchase, land development controls, or other techniques." By providing, inter alia, in General Statutes § 8-2(a), that "[z]oning regulations may be made with reasonable consideration for the protection of historic factors" the legislature has made a determination that such factors implicate the public welfare. See Smith v. ZoningBoard of Appeals, 227 Conn. 71, 629 A.2d 1089 (1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1190, 127 L.Ed.2d 540 (1994);Mansfield Development v. Mansfield Planning Zoning Commission,
Superior Court, Judicial District of Tolland at Rockville, No. 45213 (1993). Razing a contributing historic structure is inconsistent with the plan of development. Although there was photographic and testimonial evidence of the poor condition of the boarding house, the record demonstrates that there was in fact concern over destroying the historic structure. Moreover, the record demonstrates a concern that the project would interfere with the type of neighborhood presently in the area. "This building sounds too large and citified for this old Stratford street. . . . I feel as though it would be totally out of place among these private homes and in this private neighborhood."
Although the project complied with the general requirements CT Page 13735 of apartment residences set out in the regulations and there was evidence in the record that it would create minimal interference with the neighborhood, the court cannot substitute its judgment for that of the commission. The court finds that there is substantial evidence in the record that the density of the project, the height of the project, the increased traffic caused by the project would not be in conformance with the neighborhood and may lead to safety, health and welfare concerns. Accordingly, the commission was justified in denying the plaintiff's application for a special case. The appeal is dismissed.
BY THE COURT
Bruce L. Levin Judge of the Superior Court